SEBASTIAN LEE COLSON, by his Guardian Ad Litem, CLARENCE V. MAT-
TOCKS, and PATRICIA ANN COLSON v. MAMIE MACON SHAW and DAN
R. DOUGLASS

No. 36

(Filed 6 January 1981)

### 1. Automobiles § 92.1— duty of driver to passenger

The operator of an automobile has the duty to exercise that degree of care
which a person of ordinary prudence would exercise under similar circumstances
to prevent injury to the invited occupants of his vehicle.

### 2. Automobiles § 92.1— duty of driver to alighting passenger

The operator of a vehicle must at least allow his passengers to unload in a
safe place and may not stop his car in a manner likely to create a hazard to those
alighting.

### 3. Automobiles § 41— duty of driver to children

Where the actions of children are at issue, the duty to exercise due care
should be proportioned to the child's incapacity adequately to protect himself.

### 4. Automobiles § 92.3— unloading of passenger at unsafe place — sufficient evidence of negligence

In an action to recover for injuries sustained by a five year old child who
alighted from defendant's car and was struck by another car while crossing the
street, plaintiff's evidence was sufficient to enable the jury to find that defendant
breached his duty to unload his passengers in a safe place where it tended to show
that defendant driver stopped his car on the south side of a busy residential street
after dark to allow his passengers to alight therefrom and to go to a home on the
north side of the street; defendant allowed the five year old plaintiff to exit from
his car unattended with knowledge that it was necessary for the child to cross the
street to reach his destination; defendant knew that the adult who had been
responsible for the minor plaintiff before getting into the car was seated in the
back of defendant's two-door vehicle and thus could not control the child as he
alighted from the car; and there were no cars parked on the north side of the
street so as to have prevented defendant from parking next to the northern curb
directly in front of the home to which the passengers were going, thus avoiding
the necessity for the children to cross the street.

Justice BROCK did not participate in the consideration or decision of this case.

Justice CARLTON concurring in result.

PLAINTIFF appeals from a decision of the Court of Appeals, 46
N.C. App. 402, 265 S.E. 2d 407 (1980), (opinion by *Parker, J.* with
*Erwin, J.* concurring and *Martin (Harry C.), J.* concurring in part
and dissenting in part), affirming directed verdicts entered for de-

fendants by *Crissman, J.*, at the 3 April 1978 Session of GUILFORD Superior Court.

The minor plaintiff, Sebastian Lee Colson, was severely injured on 18 June 1976 when he alighted from an automobile driven by defendant Dan R. Douglass, attempted to cross the street, and was struck by an automobile driven by defendant Mamie Macon Shaw. This action was brought by the minor plaintiff and his mother, Patricia Ann Colson, to recover damages for the child's injuries and to recover the medical expenses incurred by Ms. Colson for Sebastian's treatment. Plaintiffs alleged that defendant's joint and concurrent negligence caused the child's injuries.

At trial before a jury, plaintiffs' evidence tended to show the following: On 18 June 1976 plaintiff Patricia Colson and three of her children, including plaintiff Sebastian who was then five years old, were visiting at the home of Ms. Colson's mother, Ola Mae Campbell. Ms. Campbell's home was located on the north side of East Commerce Avenue in High Point, North Carolina. East Commerce Avenue runs east and west and is intersected at right angles by Meredith Street, which runs north and south. The intersection is approximately 78 feet east of the Campbell residence. East Commerce Avenue is a frequently traveled city street, 32 feet wide and paved with a coarse blacktop surface.

Between seven and eight o'clock that evening Fanny Douglass, defendant Dan Douglass' mother, came to the Campbell residence with two of defendant Douglass' children. With the consent of Ms. Colson, Ms. Douglass took charge of the three Colson children, including Sebastian, and proceeded to walk with all five children to a friend's house. At approximately 9:00 p.m. defendant Dan Douglass, while driving his two-door Chevrolet automobile eastward on East Commerce Avenue, noticed his mother, the five children, and another adult walking eastward along the south side of East Commerce toward Meredith Street. Defendant Douglass stopped and offered the group a ride, indicating that he was willing to take them wherever they were going. They accepted and plaintiff Sebastian Colson climbed into the front seat with one of the Douglass children, while the remaining children and the two adults seated themselves in the back. Sebastian occupied the right front seat with Kevin Douglass seated in the middle next to the driver. After all were in the car, defendant Douglass was told that the Colson children were to be taken to the Campbell home, about a block away. He then drove

eastwardly toward the Meredith Street intersection and stopped his car on the right hand, or south, side of East Commerce, directly across the street from the Campbell residence. At that time there were no cars parked directly in front of the Campbell house along the north side of East Commerce.

Sebastian Colson opened the right front door, got out of the car first, walked around to the back of the car, and started to run across East Commerce Avenue towards his grandmother Campbell's house. As he was crossing the street he was hit by defendant Shaw's vehicle, which had just turned right from Meredith Street onto East Commerce and was proceeding in a westwardly direction. As a result of the collision, Sebastian sustained a cerebral concussion and residual brain damage. His medical bills at the time of trial amounted to $10,044.79.

Plaintiff Patricia Colson testified at trial that at the moment of the collision, only Sebastian and the other two Colson children had alighted from the vehicle. The other Colson children were standing at the front of the Douglass vehicle, waiting to cross the street. Ms. Douglass and the other adult who had been walking with the children were still seated in the back of the two-door car. Defendant Douglass testified that he saw Sebastian open the door and get out of the car and that he knew Sebastian had to cross the street to get to the Campbell house, but that he never made any attempt to determine for Sebastian whether there were other vehicles driving on the street. Mr. Douglass further stated that he did not warn Sebastian in any manner or make any effort to aid him in crossing the street.

At the conclusion of plaintiff's evidence, both defendants moved for directed verdicts on the grounds that plaintiffs' evidence failed to establish any negligence on the part of either defendant. The trial court granted defendants' motions and the Court of Appeals affirmed. Judge Harry C. Martin dissented from that part of the Court of Appeals' opinion which affirmed the directed verdict for defendant Douglass. Plaintiff appeals to this Court as a matter of right pursuant to G.S. 7A-30(2).

*Schoch, Schoch and Schoch by Arch Schoch, Jr. for plaintiff-appellants.*

*Smith, Moore, Smith, Schell & Hunter by J. Donald Cowan, Jr. and Suzanne Reynolds for defendant-appellee.*

COPELAND, Justice.

The sole issue before us on this appeal is whether the evidence presented by plaintiffs at trial was sufficient to withstand defendant Douglass' motion for directed verdict. Since Judge Harry C. Martin's dissent was confined to that portion of the Court of Appeals' opinion which affirmed the entry of directed verdict in favor of defendant Douglass, we are not called upon to decide the propriety of the directed verdict entered for defendant Shaw. For the reasons stated below, we hold that the trial court erred in granting defendant Douglass' motion for directed verdict.

Plaintiffs alleged that defendant Douglass was negligent in failing to supervise the minor plaintiff in alighting from his vehicle, and in failing to instruct the child in crossing the street, in violation of his duty as the owner and operator of an automobile to exercise reasonable care to insure the safety of his invited passengers. Defendants denied plaintiffs' allegation of negligence and defendant Douglass contended that he had no duty to aid the minor plaintiff in crossing the street. The Court of Appeals agreed, holding that neither defendant was negligent as a matter of law.

[1,2] It is well settled in North Carolina that the operator of an automobile has a duty to exercise that degree of care which a person of ordinary prudence would exercise under similar circumstances to prevent injury to the invited occupants of his vehicle. *Wright v. Wright*, 229 N.C. 503, 50 S.E. 2d 540 (1948); *Boykin v. Bissette*, 260 N.C. 295, 132 S.E. 2d 616 (1963). *See also Basnight v. Wilson*, 245 N.C. 548, 96 S.E. 2d 699 (1957); 7A Am. Jur. 2d *Automobiles and Highway Traffic* § 535 (1980). Our research has revealed no North Carolina cases which involve the particular duty that an operator owes to passengers alighting from his vehicle. It is generally established that the operator must at least allow his passengers to unload in a safe place and may not stop his car in a manner likely to create a hazard to those alighting. *Nelson v. Williams*, 300 Minn. 143, 218 N.W. 2d 471 (1974); *Employers Liability Assurance Corp., Ltd. v. Smith*, 322 S.W. 2d 126 (Ky. 1959); 7A Am. Jur. 2d *Automobiles and Highway Traffic* § 572 (1980). *See also Chatteron v. Pocatello Post*, 70 Idaho 480, 223 P. 2d 389 (1950); *Haskell v. Perkins*, 16 Ill. App. 2d 428, 148 N.E. 2d 625 (1958). In defining defendant Douglass' duty to the minor plaintiff in this case, we may be guided by the decisions reached by other jurisdictions when presented with a similar fac-

tual situation, as compiled in Annot., 20 A.L.R. 2d 789 (1951). Although we may be guided by these decisions, we also acknowledge the general principle that each case turning upon such an allegation of negligence must be decided on its facts, and no one decision is dispositive of another.

[3] Our determination in this case is also influenced by the rule that where the actions of children are at issue, the duty to exercise due care should be proportioned to the child's incapacity to adequately protect himself. *Yokely v. Kearns*, 223 N.C. 196, 25 S.E. 2d 602 (1943). As stated by Justice Parker, (later Chief Justice) speaking for our Court in *Pavone v. Merion*, 242 N.C. 594, 594, 89 S.E. 2d 108, 108 (1955):

> "A motorist must recognize that children, and particularly very young children, have less judgment and capacity to avoid danger than adults, that their excursions into a street may reasonably be anticipated, that very young children are innocent and helpless, and that children are entitled to a care in proportion to their incapacity to foresee and avoid peril."

[4] Upon defendant's motion for directed verdict at the completion of plaintiffs' evidence, the trial court's task was to consider the evidence in the light most favorable to plaintiffs, resolving any discrepancies in the evidence on favor of plaintiffs, to determine whether there was sufficient evidence to submit the case to the jury. *Williams v. Wachovia Bank & Trust Co.*, 292 N.C. 416, 233 S.E. 2d 589 (1977). After viewing plaintiffs' evidence in this case in the light most favorable to them, we hold that plaintiff presented enough evidence to enable a jury to find that defendant breached his duty to unload his passengers in a safe place. Plaintiff's evidence indicates that defendant allowed the five-year-old plaintiff to exit from his car unattended, on a busy residential street after dark, knowing that it was necessary for the child to cross the street to reach his destination. Since Ms. Douglass, who had been responsible for the minor plaintiff before getting into the car, was seated in the back seat of defendant's two-door vehicle, defendant knew that she could not control the child as he alighted from the car. There were no cars parked on the north side of East Commerce Avenue directly in front of the Campbell home, therefore there was nothing to prevent defendant Douglass from turning around and parking next to the

northern curb, thus avoiding the necessity for the children to cross the street. Considering these facts, we find that it was error for the trial court to grant defendant Douglass' motion for directed verdict and for the Court of Appeals to hold as a matter of law that Mr. Douglass had not breached any duty he might have owed to plaintiff.

Our conclusion is supported by the decision of the Minnesota Supreme Court in *Nelson v. Williams, supra.* In *Nelson* the defendant motorist was towing a boat on a four-lane highway when an object flew out of the boat and landed in the median separating the north and south bound lanes. He pulled his vehicle onto the right-hand shoulder of the road and allowed his eight-year-old son to cross two lanes of traffic to retrieve the object. The child was struck by a passing vehicle as he attempted to recross the highway. The Court held that the jury could reasonably find that the father failed to exercise the degree of care expected of a reasonably prudent person in the operation of his automobile, stating that:

> "The decisive question is whether the evidence justifies the jury's inference that defendant . . . in the use of his automobile failed to exercise that degree of care for the protection of his minor son that should be expected of a reasonably prudent person. In other words, could he have stopped and parked his car in such a way as to better protect his son as he left and was returning to the vehicle?" 300 Minn. at 148, 218 N.W. 2d at 474.

Since defendant could have easily driven a short distance farther and stopped his vehicle in a place from which plaintiff could have reached the median without crossing the highway, the court held that the issue of defendant's negligence was properly submitted to the jury. Likewise, the jury in the case *sub judice* could have reasonably found that defendant Douglass breached his duty to unload his passengers in a safe place.

For the foregoing reasons, we find that the trial court erred in entering a directed verdict in favor of defendant Douglass. Accordingly, the Court of Appeals' decision affirming the directed verdict is reversed, and the case is remanded to the Superior Court, GUILFORD County, for a

New trial.

Justice BROCK did not participate in the consideration or decision of this case.

Justice CARLTON concurring in result.

I concur in the result reached by the majority. I read the majority opinion to hold that a driver has a duty to discharge his passengers in a safe place and does not have a duty to supervise. My concern with the majority opinion is that its recitation of the evidence which establishes a *prima facie* case of negligence creates, I fear, an inference that a driver has the duty to stop in the *safest* place in relation to his passengers' destination. I concur in the result only insofar as it grants plaintiffs the opportunity to take their case to the jury on the *theory* enunciated by the majority. I would remand for a new trial with directions that the jury be allowed to consider only whether defendant breached his duty to unload his passengers in a safe place.